IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOLLY MCBRIETY,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 1:13-cv-00594-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Holly McBriety brings this action challenging the decision of the Administrative Law Judge (ALJ). The Commissioner of the Social Security Administration agrees the ALJ erred, but asks the court to remand the matter for further proceedings. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff filed an application for benefits on September 15, 2003. ALJ Jean Kingrey issued a decision on May 9, 2007, determining that Plaintiff was not disabled. TR 19.[1] Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied. TR 8-11. Plaintiff then filed a civil action challenging the decision and, pursuant to a stipulation of the parties, the court reversed and remanded ALJ Kingrey's decision for further proceedings.

---

[1] "TR" refers to the transcript of the Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Following a hearing on remand, a second ALJ, John J. Madden, Jr. (hereafter the "ALJ"), issued a partially favorable decision finding Plaintiff disabled as of May 1, 2009. TR 906. Plaintiff appealed and the Appeals Council remanded the case for the purpose of having ALJ Madden reconsider the period prior to May 1, 2009. On December 7, 2012, the ALJ issued another decision finding Plaintiff disabled as of April 1, 2004. Plaintiff appealed, alleging that she became disabled as of February 11, 2003.

Because the ALJ erred in rejecting the opinion of treating physician Dr. Gilmour and in finding Plaintiff's not credible, the Commissioner's decision is REVERSED. Because it is clear the ALJ would have to find Plaintiff disabled as of February 11, 2003, this matter is remanded for an award of benefits based on a disability onset date of February 11, 2003.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of

2 – OPINION AND ORDER

proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity from September 2002 until February 2003. Plaintiff does not dispute that she engaged in said activity, but points out that she alleges a disability onset date of February 11, 2003. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; chronic pain due to degenerative disc disease, deconditioning, and obesity; meniscal tear and arthritis of the left knee; and sleep apnea. TR 841.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing in 20 C.F.R. § 404, subpt. P, app. 1. The ALJ found that prior to April 1, 2004, Plaintiff had the RFC to sit for six hours in an eight hour workday, stand or walk for two hours in an eight hour workday, lift and/or carry 10 pounds, stoop, kneel, crawl, and crouch occasionally, and should not climb ladders, ropes, or scaffolding. TR 843. At step four, the ALJ found that prior to April 1, 2004, Plaintiff's RFC allowed her to perform her past relevant work as an order clerk and that Plaintiff was not disabled. TR 848.

Defendant and Plaintiff agree—albeit for different reasons— that the ALJ erred in evaluating Plaintiff's original application for disability and that these errors compel remand. Defendant argues remand is necessary as Social Security Ruling 83-20 requires the assistance of a medical expert to determine Plaintiff's disability onset date. Plaintiff argues that the decision should be reversed and remanded for payment of benefits, in part based on the ALJ's errors in

3 – OPINION AND ORDER

weighing the medical opinions and in finding Plaintiff not credible. Plaintiff argues the errors require finding her disabled as of February 2003. I agree with the Plaintiff.

I.  **Dr. Gilmour's Opinion**

A treating physician's opinion may only be rejected if the ALJ has clear and convincing reasons, supported by substantial evidence, for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal citations omitted). Dr. Gilmour was Plaintiff's primary care physician for several years, including several years of treating Plaintiff before Plaintiff ever complained of back pain. On November 2, 2002, before the alleged onset of disability, Dr. Gilmour first opined that Plaintiff needed a walker for safe ambulation. TR 416. On April 7, 2003, he opined that Plaintiff should not sit for more than 20 minutes, stand for more than 15 minutes, walk for further than 100 feet at a time, or bend or stoop, until completion of physical therapy. TR 410. Following Plaintiff's completion of physical therapy, a treatment that proved unsuccessful, Dr. Gilmour noted that Plaintiff was no longer employed and that she could no longer work due to her permanent chronic back pain. TR 390, 621. Defendant argues that the ALJ was correct in rejecting Dr. Gilmour's opinions because Dr. Gilmour's own treatment notes contradict the opinions. I disagree.

An ALJ may not properly reject a treating physician's opinion on the grounds that the physician's objective notes do not provide a basis for said opinion. *Rodriguez v. Bowen*, 876 F.2d 759, 762-63 (9th Cir. 1989). Furthermore, the ALJ cannot cite the physician's inability to support his findings with objective laboratory findings as a clear and convincing reason for rejecting the physician's opinion. *Id.* at 762 (internal citations omitted). The ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1989).

4 – OPINION AND ORDER

There is a reason treating physician's opinions, both objective and subjective, are entitled to "special weight." *Rodriguez*, 876 F.2d at 761 (quoting *Embrey*, 849 F.2d at 421). Treating physicians are in the best position "to know and observe the patient as an individual." *Id.* (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Dr. Gilmour treated and observed Plaintiff for several years, including a substantial period before Plaintiff experienced back pain. Dr. Gilmour had all the medical evidence, the MRI results, the reports from the physical therapist, and his own observations of Plaintiff.

Although Dr. Gilmour's treatment notes remark that Plaintiff continually showed a negative sciatic nerve stretch and normal neurological examinations, his opinions support a finding of disability because they are corroborated by additional medical evidence. Dr. Bobek, who evaluated Plaintiff for a steroid injection to treat her back pain, found degeneration of the L4-5 and L5-S1 discs and loss of lordosis from her MRI scan. TR 245-246. Bobek also noted that Plaintiff's pain radiated into her right leg and that it took her a couple of minutes just to get onto the examining table because of her back pain. *Id.*

Plaintiff was also treated by Physical Therapist Donato for her back pain. Donato treated Plaintiff from April-September 2003 and ultimately terminated the therapy because treatment "failed to return patient's low back to a functional and workable condition" and "[n]o further treatment [was] expected to improve her condition." TR 190.

There is no evidence suggesting malingering or that Plaintiff ever fabricated her complaints. In fact, Dr. Box, the only physician to specifically comment on the matter, noted that Plaintiff passed a screening test for malingering and offered his belief that Plaintiff "is sincere in her complaints." TR 252. Dr. Box noted objective findings, as well as "corroborating evaluations by neuromuscular pain specialists" supported Plaintiff's complaints. *Id.* Dr. Box concluded "It is

likely that her underlying primary problem is not that severe but her morbid obesity greatly exacerbates this problem." TR 253. Dr. Gilmour also knew Plaintiff's obesity would tend to compound her other ailments and, as Plaintiff's treating physician, reached a similar conclusion a year before Dr. Box examined Plaintiff.

From September 9, 2002, when Plaintiff first saw Dr. Gilmour for back pain, Dr. Gilmour's notes reflect his belief that Plaintiff's back pain was getting progressively worse. On September 9, Dr. Gilmour noted Plaintiff had radiation of pain into the extremities and hips and legs. TR 423. Noting Plaintiff's mild spasms and tenderness, Dr. Gilmour prescribed muscle relaxers and pain medication. Nine days later, Dr. Gilmour noted plaintiff had sciatica, but could attempt working four hours per day. TR 421. One month later, Dr. Gilmour noted Plaintiff complained of more pain and ordered a lumbar spine MRI. One month later, Dr. Gilmour stated Plaintiff's condition had not improved and Plaintiff reported a lot of pain. TR 416. Dr. Gilmour opined Plaintiff may benefit from an epidural.

A few months later, after Plaintiff received an epidural after an examination by Dr. Bobek, Dr. Gilmour sent Plaintiff to physical therapy for sciatica. TR 410. After physical therapy, on September 22, 2003, Dr. Gilmour noted Plaintiff continued to have pain and was no unable to work due to chronic back pain. TR 621. In Dr. Gilmour's opinion, this was a permanent condition.

The ALJ also rejected Dr. Gilmour's opinions because the ALJ assumed Dr. Gilmour's opinions were based on Plaintiff's subjective complaints. As described below, the ALJ erred in finding Plaintiff not credible. Therefore, to the extent the ALJ rejected Dr. Gilmour's opinion because it was based on Plaintiff's subjective reporting, the ALJ erred.

6 – OPINION AND ORDER

Because the ALJ failed to accord Dr. Gilmour's opinions the appropriate weight, the ALJ committed reversible error.

## II.    Plaintiff's Credibility

When the record establishes a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *Smolen v. Chater*, 80 F.3d 1273, 1281-81 (9th Cir. 1996). If there is no evidence of malingering by the claimant, the ALJ may only reject the claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). While an ALJ may find testimony not credible in part or in whole, he or she may not disregard the testimony solely because it is not substantiated by objective medical evidence. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

> The extent of the ALJ's adverse credibility determination consisted of:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's subjective compliants concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to April 1, 2004. As noted above, she continued working until February 2003, six months after the alleged onset date. There was no indication of a worsening of conditions around that date, so it is reasonable to expect that she could have continued work activity at some level thereafter. She reported engaging in lengthy hours of daily activities including hobbies and watching television (Ex. 4E). Finally, as discussed in detail next, her alleged back problems have little objective support during this period.

TR 814.

The ALJ determined that Plaintiff was not credible in part because she did not cease working after the alleged onset date, which the ALJ referred to as September 9, 2002. Plaintiff's alleged onset of disability, however, was February 11, 2003, not September 9, 2002. The ALJ also rejected Plaintiff's credibility because there did not appear to be any significant worsening

7 – OPINION AND ORDER

of Plaintiff's condition from September 9, 2002 until the date she ceased working completely, February 11, 2003. However, in advancing this argument, the ALJ disregarded the hours and frequency at which Plaintiff remained at work.

Before September 9, 2002, Plaintiff worked full time. TR 79. At that point, Plaintiff had to miss work for a week due to the original onset of her back pain. Plaintiff saw Dr. Gilmour on that date with complaints of back pain. . *Id.* Plaintiff then attempted to work but could no longer work full time; she could only work up to four hours and would often go home early because it was "intolerable [for her] to sit for that period of time." TR 807. This intermittent, less-than full time schedule continued for several months. Eventually, Plaintiff was forced to quit her job because her back pain interfered with her ability to perform daily tasks at work. *Id.* Contrary to the ALJ's finding, this is evidence of a worsening of the Plaintiff's condition from September 9, 2002 until the alleged onset date of February 11, 2003. That Plaintiff's condition significantly worsened during this time is fully supported by the opinion of Dr. Gilmour, noted above.

In addition to finding Plaintiff less-than credible on the basis of an incorrect alleged onset of disability, the ALJ appears to have faulted Plaintiff for attempting to work over several months on a reduced schedule. That Plaintiff attempted to work through her back pain but, after several months, was unable to continue work, is not a legitimate reason to discredit Plaintiff. Plaintiff did not work after February 11, 2003, the alleged onset date. In finding Plaintiff less-than credible for working after the alleged onset date, the ALJ erred.

The ALJ also discredited Plaintiff's subjective complaints because, according to the ALJ, the alleged limitations did not align with Plaintiff's activities of daily living. However, finding that Plaintiff engaged in "lengthy hours of daily activities including hobbies and watching television" is not an accurate characterization of Plaintiff's statements. TR 116. After the onset

8 – OPINION AND ORDER

of her back pain, Plaintiff became less than sedentary. She can no longer do laundry without help, sweep, mop, or vacuum, and cannot make her own bed. She reported taking breaks from simple sedentary activities, such as crocheting and cross-stitching, to lie down due to her back pain, and she spends the majority of her day in her recliner. TR 812. Plaintiff clearly struggles to engage in activities for even short periods of time, much less lengthy hours. A claimant does not have to be utterly incapacitated to qualify for benefits. *Fair*, 885 F.2d at 603. Additionally, watching television and cross-stitching are so undemanding that they cannot be said to have a meaningful relationship to the activities of the workplace. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff's activities support a finding of disability, do not contradict her other testimony, and do not meet the threshold for transferable work skills. Additionally, Plaintiff's testimony was fully supported by testimony from her husband and a friend.

The ALJ provided no legitimate reasons, let alone clear and convincing reasons, for finding Plaintiff not credible. As the ALJ erred in finding Plaintiff not credible, Plaintiff's testimony is credited as true and this matter is remanded for payment of benefits as there are no unresolved issues to be resolved. *Varney v. Seretary of Health and Human Services (Varney II)*, 859 F.2d 1396, 1398-99 (9th Cir. 1988); *Lester*, 81 F.3d at 834. Accepting Plaintiff's subjective pain testimony as true, this record is complete. The VE testified there would be no available jobs if, as alleged by Plaintiff, she had to lie down for more than the usual break and lunch periods. TR 828-29.

Contrary to Defendant's argument, there is no need for medical expert testimony. Social Security Regulation 83-20 provides for a rebuttable presumption of disability on the alleged onset date. Based on the alleged onset date, Plaintiff's work history, the medical evidence, and Plaintiff's own testimony, it is clear the onset date is the alleged onset date of February 11, 2003.

9 – OPINION AND ORDER

## CONCLUSION

The Commissioner erred in making an adverse credibility determination and in rejecting the testimony of Plaintiff's treating physician.[2] The Commissioner's final decision is REVERSED and REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 36 day of July, 2014.

                                              Michael McShane
                                              United States District Judge

---

[2] Because Dr. Gilmour's opinion and Plaintiff's subjective complaints of pain compel a finding of disability as of February 11, 2003, it is unnecessary to determine whether the ALJ erred in concluding the Plaintiff's impairments did not meet or equal a listed impairment.

10 – OPINION AND ORDER